ORDERED.

Dated: November 07, 2017

*K. Rodney May*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re<br><br>United States Pipe & Foundry Co.,<br><br>        Debtor.<br>_____/ | Case No. 8:89-bk-09744-KRM<br>Chapter 11 |
| United States Pipe & Foundry Co.,<br><br>        Plaintiff,<br>v.<br><br>Benetha Adams, et al.,<br><br>        Defendants.<br>_____/ | Adv. Pro. No. 8:17-ap-0032-KRM |

**MEMORANDUM OPINION AND ORDER
<u>ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>**

In this adversary proceeding, the Debtor, whose Chapter 11 plan was confirmed more than 20 years ago, seeks a declaratory judgment that recently-filed lawsuits in Alabama state court are barred by its 1995 bankruptcy discharge. The parties have filed motions for summary judgment and they agree that the outcome depends on application of the principles enunciated in *Epstein v. Official Committee of Unsecured Claimants of Estate of Piper Aircraft Corporation,*

58 F.3d 1573 (11th Cir. 1995) ("*Piper*"), to determine whether the 1,300 state court plaintiffs ("Defendants" in this proceeding) had "claims," as defined in 11 U.S.C. § 101(5), that were discharged by the Confirmation Order and 11 U.S.C. § 1141(d)(1)(A).[1] After considering the motions for summary judgment,[2] Debtor's Response,[3] Defendants' Memorandum of Law in Opposition,[4] the affidavits and exhibits submitted by the parties, and oral arguments by counsel, the Court concludes that summary judgment is due to be entered for the Defendants.

## BACKGROUND FACTS

United States Pipe & Foundry Company, LLC ("Debtor") was previously a wholly-owned subsidiary of Walter Industries, Inc., now known as Walter Energy, Inc. Debtor manufactured ductile iron pipe for industries and municipalities. Its plant in Birmingham, Alabama, was constructed in 1910; manufacturing began around 1911; and operations ceased around 2010. The plant was ultimately dismantled in 2012 after the surrounding area was designated as a Superfund site.[5]

Debtor's Bankruptcy Case

Debtor, its parent, and affiliated companies filed voluntary petitions for relief under Chapter 11 in this Court on December 27, 1989. The initial claims bar date was October 30, 1992.[6] Notice of the claims bar date was mailed to all creditors named in the Debtor's schedules.

---

[1] Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

[2] Doc. Nos. 20 and 21.

[3] Doc. No. 24.

[4] Doc. No. 27.

[5] Doc. No. 21 at 5. Superfund sites are hazardous waste sites that pose potential threats to human health or the environment. The Comprehensive Environmental Response, Compensation, and Liability Act was created to finance emergency responses and cleanups of those sites. <https://www.epa.gov/superfund/>.

[6] Doc. No. 1 at ¶ 7.

None of the Defendants, however, were listed in the schedules; none of them were specifically notified of the claims bar date. The claims bar notice was published in newspapers in Birmingham, Alabama, and throughout the United States, including the national editions of The Wall Street Journal and the New York Times.[7]

Debtor and its affiliates filed an Amended Joint Plan of Reorganization, dated as of December 9, 1994 (the "Plan"). On December 15, 1994, this Court entered a Second Confirmation Hearing Notice, which was published in newspapers in Birmingham, Alabama, and throughout the United States, including the national editions of The Wall Street Journal and the New York Times.[8]

Section 12.1 of the Plan provided for the re-vesting of all assets in the Debtor, free and clear of all claims. The term "claims" in the Plan was adopted from § 101(5) of the Bankruptcy Code.[9] Sections 12.2 and 12.3 of the Plan set forth the provisions for Debtor's discharge and the injunction that would become operative on the Effective Date of the Plan.[10]

Section 12.2 of the Plan provided:

> The issuance of the Confirmation Order shall (a) operate as a discharge, pursuant to §1141 of the [Bankruptcy] Code, effective as of the Effective Date, of any and all debts (as such term is defined in §101(12) of the [Bankruptcy] Code) of or Claims against one or more of the Debtors that arose at any time before the Effective Date ... whether accrued before, on or after the Filing Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtors shall be discharged from any debt that arose before the Effective Date ... to the fullest extent permitted by §1141(d)(1)(A) of the [Bankruptcy] Code. Nothing in the Consensual Plan shall be deemed to waive, limit or restrict in any way the

---

[7] Doc. No. 1, Ex. B.

[8] Doc. No. 1, Ex. D.

[9] Doc. No. 20, Ex. A.

[10] In the Plan, the Effective Date was defined as "the first Business Day after all conditions set forth in Section 10.2 of the Consensual Plan have been satisfied or waived, but which shall not be less than eleven days after the Confirmation Order is entered." Doc. No. 20, Ex. A.

discharge granted upon Confirmation of the Consensual Plan pursuant to §1141 of the [Bankruptcy] Code and effective as of the Effective Date.

Section 12.3 of the Plan called for the discharge to be enforced by an injunction.

The Plan was confirmed by an order entered on March 2, 1995 (the "Confirmation Order"). The Confirmation Order provided, among other things, for the discharge of all claims arising before the Effective Date. It enjoined holders of claims from pursuing the Debtor and other released parties (as defined in the Plan) from liability on account of such claims. Under §1141(d) of the Bankruptcy Code and the Confirmation Order, the Debtor was discharged of all claims arising before March 2, 1995.

Post-Bankruptcy State Court Actions

In 2006, the Debtor was sued for claims similar to those being asserted by the Defendants − personal injuries and property damages arising from the release or discharge of toxic chemicals from Debtor's plant. Those claims were settled; the complaint and the settlement documents were filed under seal.

In 2009, the EPA began testing areas near the plant. Sometime between 2009 and 2012, an area around the plant was designated as a Superfund site. In 2013, Debtor was named as a potentially responsible party for cleanup activities in that designated site.

Current State Court Actions

In September of 2015, the Defendants filed twenty-four complaints against Debtor in Alabama state court.[11] Thirteen of these lawsuits were later removed to the United States District Court for the Northern District of Alabama. The remaining state court lawsuits were consolidated for pre-trial coordination and discovery.

---

[11] Defendants' Motion for Summary Judgment alleges that the Defendants have filed a total of twenty-five complaints. Doc. No. 21 at 2.

The state court complaints are virtually identical, with counts for negligence, wanton conduct, nuisance, negligence *per se*, and trespass.[12]  They allege that: harm was caused by Debtor's manufacturing process, which resulted in the release of contaminants into the air, ground, and water; the release of contaminants occurred as early as 1911; the contaminations had "an immediate and/or permanent adverse effect;"[13] and each of the plaintiffs was exposed to toxicologically significant levels of the contaminants released from the plant.  As a result of the exposure, each of the plaintiffs have suffered various personal injuries and/or property damages,[14] including such diseases and medical illnesses as lung cancer, kidney failure, and birth defects.[15]  It is alleged that these injuries did not become known until after the date of the Confirmation Order.[16]

Debtor filed this adversary proceeding on January 18, 2017, to obtain a declaratory judgment that, as a matter of law, the claims asserted by the Defendants arising out of prepetition or pre-confirmation exposures were discharged in 1995.  Thus, such claims are enjoined by the Confirmation Order and the statutory discharge injunction.  In their presentations to the Court on August 4, 2017, the parties agreed that the proceeding is directed at persons who, prior to the entry of the Confirmation Order, had contact with the neighborhood surrounding the plant by working or visiting there, or by owning property there.[17]

---

[12] The amended complaints name both U.S. Pipe and Mueller Water Products, Inc. as defendants.

[13] Doc. No. 18-1 (Amended Complaint) at ¶ 8.

[14] Jones Decl. (Doc. No. 22-1) at ¶ 16.

[15] *Id.* at ¶ 17.

[16] In their Motion for Summary Judgment, the Defendants allege that they had no reason to know that they had been exposed to contaminants until after the date of the 1995 Confirmation Order.  Doc. No. 21 at 4; Jones Decl. at ¶ 17; August 4, 2017 Hearing Tr. at 21: 23 – 22:2.

[17] August 4, 2017 Hearing Tr. 5:17- 6:23.

## ANALYSIS

Section 1141(d)(1)(A) provides that confirmation of a plan of reorganization "discharges the debtor from any debt that arose before the date of such confirmation . . . ."[18] A "debt" is defined in § 101(12) as a liability on a "claim." And, "claim" is broadly defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[19]

> "A claim is contingent where 'the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.' In other words, the debtor's liability is not yet established. In determining whether a claim exists for purposes of the Bankruptcy Code, it has been said that a 'claim' can exist under the Code before a right to payment exists under state law."[20]

The legislative history of § 101(5) of the Bankruptcy Code indicates that Congress intended the term "claim" to be given broad interpretation so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."[21]

The Court must determine whether the Defendants, who did not know of their personal injuries or property damages until some years later, nevertheless held "claims" during Debtor's Chapter 11 case. If the Defendants did not then have "claims," the liabilities asserted in their state court lawsuits were not discharged.

Federal courts have articulated different tests to determine whether a "claim" for a tort exists at the time of bankruptcy where debtor's conduct occurred prepetition, but the personal injury may not be discovered until after the bankruptcy case is concluded. These approaches to

---

[18] § 1141(d)(1)(A).

[19] § 101(5).

[20] *In re Johns-Manville*, 552 B.R. 221, 231-32 (Bankr. S.D.N.Y. 2016) (internal citations omitted).

[21] H.R.Rep. No. 595, 95th Cong., 2nd Sess. 309 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6266.

the issue are denominated as the "state law accrual" test,[22] the "conduct" test,[23] and the "prepetition relationship" test.[24] Some courts also include a fourth approach, the "fair contemplation" test, which was developed to deal with future environmental regulatory claims in bankruptcy proceedings.[25]

The *Piper* Test

Here, the parties agree that *Piper* is the governing legal precedent; but, they disagree on the application of the so-called *Piper* test. Specifically, the issue is whether a person must know, during the bankruptcy case, that they have a right to payment before they can have a claim that may be discharged.

Prior to its bankruptcy filing, Piper Aircraft Corporation ("PAC") had been sued in a number of product liability actions.[26] In its Chapter 11 case, PAC entered into a contract to sell substantially all of its assets, free and clear of claims.[27] To protect the buyer from successor

---

[22] *See, e.g., In re M. Frenville Co.*, 744 F.2d 332 (3rd Cir. 1984) (finding that an indemnification claim which did not arise under state law until after the petition date was not a claim under § 101(5)), cert denied, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d. 925 (1985). *Frenville* was overruled in 2010 by *Jeld-Wen, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114 (3d Cir. 2010).

[23] *See, e.g., Grady v. A.H. Robbins Co. (In re A.H. Robbins Co.),* 839 F.2d 198 (4th Cir. 1988) (finding that plaintiff held a prepetition contingent claim stemming from the prepetition insertion of a Dalkon Shield IUD even though the manifestation of injuries did not occur until after the petition date, since the act constituting the tort other than the manifestation of injury had occurred prior to the petition date).

[24] *See In re Piper Aircraft Corp.,* 162 B.R. 619, 624–26 (Bankr. S.D. Fla. 1994), *aff'd as modified sub nom. Epstein v. Official Committee of Unsecured Claimants of Estate of Piper Aircraft Corporation ("Piper III"),* 58 F.3d 1573 (11th Cir. 1995).

[25] *In re Nat'l Gypsum Co.,* 139 B.R. 397, 405–06 (N.D. Tex. 1992) (finding that future response costs and future natural resource damage costs are "claims" subject to discharge, if the costs from the debtor's prepetition conduct could have been "fairly" contemplated at the time of the debtor's bankruptcy). *But see, In re Agway, Inc.,* 313 B.R. 31, 42 (Bankr. N.D.N.Y. 2004) (finding the fair contemplation test − which provides that a claim exists if, based on of the prepetition conduct in question, the parties can fairly contemplate the existence of a claim − applied to general tort claims).

[26] *In re Piper Aircraft*, 162 B.R. at 621.

[27] *Id.*

liability, the asset purchase agreement required the appointment of a representative of a class of future injury claimants.[28]

The bankruptcy court appointed the future claims representative, who filed a proof of claim for $100 million, based on a statistical estimate of future claims from PAC's prepetition negligent design or manufacture of aircraft.[29] PAC and the creditors' committee objected to the claim on the grounds that the future claimants did not hold "claims" within the meaning of § 101(5).[30]

The bankruptcy court rejected the "state law accrual" test as being inconsistent with the Bankruptcy Code's broad definition of claim, which includes contingent and unmatured obligations.[31] The bankruptcy court also rejected the "conduct" test, where a claim would exist from the time when the act giving rise to the alleged liability occurred.[32] That test would define a bankruptcy claim too broadly, by establishing dischargeable claims as of the time when the negligent design or manufacture of products occurred.[33]

The bankruptcy court adopted, instead, a "prepetition relationship" test. When defining the outer limits of the concept of a "claim," "there must be some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant."[34] The bankruptcy court went on to say that:

---

[28] *In re Piper Aircraft*, 162 B.R. at 621.

[29] *Id.* at 621-22.

[30] *Id.* at 622.

[31] *Id.* at 624.

[32] *See, e.g. In re A.H. Robbins Co.,* 839 F.2d 198.

[33] *In re Piper Aircraft,* 162 B.R. at 625.

[34] *Id.* at 625.

> "The Conduct Test and the Relationship Test are not mutually exclusive theories. Requiring that there be some prepetition relationship between the Debtor and claimant would not change the analysis or results of the Conduct Test cases. In fact, *such a requirement appears to be implicit in those decisions.* In the asbestos cases, the future claimants were individuals *who were known to have had prepetition exposure to the dangerous product*."[35]

Because future injury claimants had not yet used PAC's defective airplanes or parts, such future claimants did not have "claims" in PAC's bankruptcy case.[36]

The Eleventh Circuit affirmed, after reviewing the tests that the bankruptcy court had considered. The court adopted this version of the relationship test:

> "an individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in the bankruptcy case *only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct.*"[37]

The Eleventh Circuit concluded that the class of future injury claimants would not meet this threshold requirement because they had no pre-confirmation exposure to PAC's products; nor was there any other pre-confirmation relationship between PAC and the broadly defined class of future injury claimants.[38]

<u>Defendants Did Not Have "Claims" At the Time of the Chapter 11 Case</u>

Debtor argues that the determination of whether a claim exists in a bankruptcy case is not dependent on a claimant's knowledge. Debtor cites *In re Pan American Hospital Corporation*,[39]

---

[35] *In re Piper Aircraft,* 162 B.R. at 627 (emphasis added).

[36] *Id.* at 627-28. The District Court affirmed. *In re Piper Aircraft Corp. ("Piper II")*, 168 B.R. 434 (S.D. Fla. 1994).

[37] *Piper III*, 58 F.3d at 1577 (emphasis added).

[38] *Id.* at 1578.

[39] *In re Pam Am. Hosp. Co.*, 364 B.R. 839, 848 (Bankr. S.D. Fla. 2007).

9

where a hospital failed to timely intubate a patient. The patient remained in a coma for approximately four months, and died shortly after the hospital filed for Chapter 11 relief. The bankruptcy court applied the *Piper* test and concluded that "the 1978 Bankruptcy Code recognizes a 'right to payment' for the victim of a debtor's prepetition misconduct at the *earliest point in the relationship between the victim and wrongdoer*."[40] The court ruled that the requisite relationship arose when the patient was admitted to treatment pre-bankruptcy, which was sufficient to establish a prepetition claim that could be discharged in the Chapter 11 case.[41]

Debtor also cites *In re Johns-Manville*, a 2016 asbestos case where the wife of a retired mill worker brought an action in state court claiming that she contracted cancer in 2015 as a result of exposure to asbestos on her husband's work clothes. The claimant opposed a motion filed by a successor in interest to the debtor to enforce the confirmation orders entered by the bankruptcy court in 1984.

It is significant that the claimant admitted being exposed to asbestos before the 1982 bankruptcy case.[42] Thus, the bankruptcy court held that her § 101(5) claim arose prepetition when the claimant had first been exposed: "[t]his Court concludes that under the relationship test set forth by the Second Circuit, a sufficient relationship is formed *when the claimant is exposed to the asbestos* as a result of the debtor's allegedly tortious conduct."[43] The personal injury claim was held to be a prepetition claim subject to discharge.[44]

---

[40] *In re Pam Am. Hosp. Co.*, 364 B.R. at 848 (citing *Roach v. Edge (In re Edge)*, 60 B.R. 690, 699 (Bankr. M.D. Tenn. 1986) (emphasis added in *In re Pan Am.*).

[41] *Id.*

[42] *In re Johns-Manville Corp.*, 552 B.R. 221.

[43] *Id.* at 237. The bankruptcy court observed that the Second Circuit has relied on the "fair contemplation" test in dealing with contingent claims in other contexts:

Relying on these cases, Debtor argues that Defendants' allegations in their state court complaints – that the discharge of contaminants from 1911 had an "immediate and/or permanent adverse effect" − is sufficient to put them within the *Piper* test. But, there is nothing in the record to support a finding that during the Debtor's Chapter 11 there existed any basis to suspect that there were exposures from Debtor's conduct. Neither Debtor, nor Defendants knew of any harmful exposure from the plant during Debtor's Chapter 11 case.[45]

Based on the undisputed facts before the Court, as summarized above, the Debtor's release of contaminants alone, however permanent or immediate, is insufficient to establish the necessary relationship between the conduct and any identifiable claimant.[46]

---

(a) "a claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and creditor contained all of the elements necessary to give rise to a legal obligation – a right to payment – under relevant non-bankruptcy law." *Id.* at 233 (federal regulatory environmental claim)

(b) contingent claims refer "to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." *Id.* (contingent contract claim)

*See In re Nat'l Gypsum Co.*, 139 B.R. at 405; *LTV Steel Comp., Inc. v. Shahaha (In re Chateaugay Corp.)*, 53 F. 3d 478, 497 (2d Cir. 1995) (*quoting In re Nat'l Gysum Co.*, 139 B.R. at 405); *Olin Corp. v. Riverwood Int'l Corp.*, 209 F. 3d 125, 129 (2d Cir. 2000). But, the bankruptcy court noted that the Second Circuit had not conclusively applied these formulations to future tort claims. *In re Johns-Manville*, 552 B.R. at 234. As a result,

"[b]ankruptcy courts of the Second Circuit have adopted various approaches to determining when a tort claim may be said to arise for purposes of the Bankruptcy Code. *Compare In re Agway, Inc.,* 313 B.R. 31, 42 (Bankr. N.D.N.Y. 2004) (applying the fair contemplation test to find elements of statutory cause of action in negligence were met prepetition), *with In re Quigley Co.,* 383 B.R. 19, 27 (Bankr. S.D.N.Y. 2008) (applying the conduct test to find asbestos claimants exposed prepetition had prepetition claims)."

*Id.*

[44] *In re Johns-Manville*, 552 B.R. at 237.

[45] Doc. No. 21 at 4; Jones Decl. at ¶ 17; August 4, 2017 Hearing Tr. at 21: 23 – 22:2. Debtor admits that it was wholly unaware of any of these claims during the pendency of the Chapter 11 case. Doc. No. 20 at 2.

[46] The Defendants' allegation in their state court complaints, that the "contaminants had an immediate and/or permanent adverse effect upon human health and the natural environment in which the [Defendants] lives, worked, and/or frequented," does not necessarily mean that the Defendants themselves were thus exposed. Doc. No. 18-1 (Amended Complaint) at ¶ 8. There is no evidence in the record regarding how long it took for the contaminants to

11

The bankruptcy court in *Piper* recognized that in the asbestos cases, the claimants were known to have exposure.[47] The court in *Johns-Manville* also discussed at length, in the context of due process, that the claimant had actual notice of the dangers of asbestos exposure well before Johns-Manville filed for bankruptcy in 1982. At the time of Johns-Manville's Chapter 11, the claimant knew that Johns-Manville was her husband's employer and that she had been exposed to asbestos.[48] Likewise, in *Pan American Hospital*, the family of the comatose patient and the hospital knew enough at the time of the hospital's bankruptcy case to articulate the connection between the hospital's prepetition malpractice and the tort claim.

The *Piper* test's requirement of a "relationship" between a debtor's conduct and an "identifiable" claimant implies the further requirement that either (1) the debtor itself is able to identify, during the bankruptcy case, from knowledge of its own conduct, a class of potential future injury claimants or (2) future injury claimants have, during the bankruptcy case, knowledge of objective facts connecting them or their property to the debtor's conduct (e.g. from employment, or purchase or use of a product) so as to be aware of the potential impact of a bankruptcy discharge.[49]

---

reach the Defendants once released into the environment or when any of the Defendants were initially exposed to the contaminants.

[47] *In re Piper Aircraft*, 162 B.R. at 627 ("In asbestos cases, the future claimants were individuals who were known to have had prepetition exposure to the dangerous product.")

[48] The court noted that her husband had filed a claim in the bankruptcy case and received payment from the Manville Trust. *In re Johns-Manville*, 552 B.R. at 229. The bankruptcy court also observed that the claimant was trying to side-step submitting a claim to the trust created for future claims by suing to recover more than other asbestos victims.

[49] In a case involving release of contaminants into the neighborhood prior to confirmation, a bankruptcy in California reasoned that:

> "[The *Piper*] test appears to incorporate, at least implicitly, the notion that a future claim must be within the reasonable contemplation of the parties. If a relationship exists between the pre-petition conduct of the debtor and an *identifiable* potential claimant, it typically follows that the parties can fairly contemplate the *possible* existence of a claim against the debtor."

There is a practical, as well as a due process, concern here.[50] How can a "claim" be administered during a bankruptcy case if the alleged holder does not know enough to articulate it and the debtor does not know enough to be able to notify the future claimants or estimate their claims? To administer claims during the Chapter 11 case, there must be a minimum level of knowledge of reasonably objective facts to connect a debtor's pre-confirmation conduct to identifiable future injury claimants.

Here, Defendants' exposure to toxic chemicals in the air, ground, and water surrounding the plant was unknown until sometime after 1995. Looking back, hypothetically, if the *Piper* test had been applied during Debtor's Chapter 11 case, none of the residents of, or visitors to, the neighborhood could have been identified as future claimants based on the contamination, because the tortious conduct had not yet been disclosed or discovered. Nor, had it yet resulted in a known injury.[51] Likewise, and again hypothetically, if Debtor's Chapter 11 had occurred after the filing of the 2006 lawsuit or the EPA's later testing, this decision would be governed by the outcomes in most of the asbestos cases.

---

*Hexcel Corp. v. Stepan Co. (In re Hexel Corp.)* 239 B.R. 564, 568 (N.D. Cal. 1999). *Hexcel* stems from the Ninth Circuit's opinion in *In re Jensen*, 995 F.2d 925 (9th Cir. 1993), where the court adopted the "fair contemplation" test in a bankruptcy case involving a potential Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") liability claim against the debtors resulting from contamination cleanup. The "fair contemplation" test provides "all future response and natural resource damages costs based on pre-petition conduct that can be fairly contemplated by the parties at the time of the [d]ebtor's bankruptcy are claims under the [Bankruptcy] Code." *Id.* at 930 (citing *In re Nat'l Gypsum Co.*, 139 B.R. at 409).

In other jurisdictions, courts have ruled that future tort claimants do not hold dischargeable "claims" under the relationship test where, as here, the tort claimant has no basis for learning of its claim prior to confirmation of the debtor's plan. *See Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.)*, 467 B.R. 694, 704-05 (S.D.N.Y. 2012) (citing *Lemelle v. Universal Mfg. Corp.*, 18 F. 3d 1268, 1277 (5th Cir. 1994).

[50] The parties address the issue of due process and whether the Defendants received proper notice of the claims bar date during the Debtor's bankruptcy case. If this Court had found that the *Piper* relationship existed, the Court would have likely ruled that the Debtor's publication notice of the claims bar date was adequate to apprise the Defendants of the claims bar date. *See In re Johns-Manville,* 552 B.R. at 240-42.

[51] Doc. No. 21 at 5.

The Court rejects the argument that Debtor's discharge of harmful chemicals into the air, water or soil since 1911, by itself, created the necessary relationship of conduct to identifiable claimant, as required by the *Piper* test. Defendants did not have claims prior to the Confirmation Order. Thus, the claims they now assert in the state court lawsuits were not discharged in 1995.

## **CONCLUSION**

Summary judgment is appropriate here because there is no genuine issue of material fact. The issue here is susceptible of decision solely as a matter of law.[52] For the reasons stated above, the Court hereby grants the Defendants' Motion for Summary Judgment, and denies the Plaintiff's Motion for Partial Summary Judgment. Accordingly, it is

ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 21) is granted.

    a. The Defendants did not have claims, as defined by § 101(5), during the Debtor's Chapter 11 case;

    b. The claims now asserted by the Defendants in state court actions were not discharged in the Debtor's bankruptcy case, and therefore, the Defendants are not barred from asserting those claims against the Debtor; and,

    c. The Defendants are not enjoined from further prosecution of the claims asserted in the state court complaints.

2. Debtor's Motion for Partial Summary Judgment (Doc. No. 20) is denied.

Clerk's office to serve.

---

[52] Fed. R. Civ. P. 56(a) is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056.